Mr. Russo, did I pronounce your client's name correct? Yes, you did, Your Honor. Okay, thank you. Your Honor, my name is Donald Russo. I represent Gerard Griesbaum. In this case, I'd like to reserve two minutes of time for rebuttal. All right, remember the red light. Yes, I'll watch out peripherally. Moving to Clinton 10. May it please the Court, this is essentially a state law cause of action arising under the Pennsylvania Supreme Court's decision in Schiff v. Shirey, in which, I believe that was the 1999 case in which the Pennsylvania Supreme Court reversed the Superior Court and allowed a cause of action to go forward as one of the limited exceptions to the at-will discharge rule. If, in fact, the litigant can show that his termination from employment was causally and temporally related to having filed a workers' compensation claim. Mr. Russo, do you concede that the evaluation of this claim would be under the Title VII burden-shifting process? Yes, Your Honor. Judge Vanaskie addressed that in the lower court's opinion, and I do believe that's why I raised the issue of that problem. But you concede that's the standard we should look at this claim under? Yes. This is sort of a difficult case because, by way of state court, there might be a different standard of review. In federal court, obviously, as Judge Vanaskie, we're not quarreling with the idea that the Title VII burden-shifting analysis would apply. And that's why I think that the Burlington-Santa Fe v. White case is so crucial to the outcome of this case. Explain to us. Obviously, I was interested in your argument on Burlington v. Santa Fe, Burlington-Santa Fe v. White. But really, didn't that case go to the second prong of the test? And really, isn't the issue here causation? The issue still is and always has been causation. There are clearly causation, causation, and more causation, although you have to look at the temporal, the break in time. That's always another fact that has to be considered in these cases. But here, what's difficult about this case is that the employers, rather in a clinical fashion, applying a corporate policy that is on the books and in a rather straightforward fashion, just says the individual is terminated from his employment because of the application of the policy. If we were to allow that kind of facially neutral policy to be applied in every case, it would automatically inoculate and insulate every defendant from any claim of retaliation, whether it be in a Title VII case or in a state law. I understand that. It would only insulate him if there was some circumstance that satisfied the policy. And I would think that the policy, I mean, in this case, the person was injured on the job, so there was a workers' compensation claim. But if he had a fall in his house on a weekend when he wasn't working, it would have the same outcome if he didn't come back for a year. Yes, Your Honor, but let's say for argument's sake it was an ADA case in which there was an accommodation being sought. Let's say somebody's course of treatment for some type of a cancer would extend over 14 months, and the accommodation you're requesting is an extension of a week of absence. The automatic application of a 12-month discharge rule would, if that were to be allowed to be the case, would automatically exempt them from your company. In that case, he would be seeking an accommodation to accommodate a disability which was in a protected category, a protected situation. But there's nothing protected here. You're not, I mean, I don't know what in the world is protected here. They can't penalize him for making a compensation claim, but he can't say, because I made a compensation claim, I have to get a protection that I otherwise wouldn't have. I just don't follow it. Judge Greenberg, I have to respectfully disagree that there's nothing protected here. It is the filing of the receipt in pursuit of the workers' compensation benefits that is the activity protected as per the Supreme Court. You can penalize him for that, but that doesn't give him the affirmative rights to now get things from the company. It gives him the right not to be penalized for it. But suppose he never filed or there was never on his behalf a compensation claim for some reason. Then at the end of the year, they let him go. Would there be a problem? Your Honor, you're saying that if he had indeed been injured on the job and had not pursued a workers' comp claim? Yeah. And then at the end of the year, he didn't come back because he was still injured. Couldn't they have let him go? I think they could have because the issue is they were not fighting or there was no animosity arising as a result of a pursuit of litigation. The workers' comp litigation can get pretty hot and heavy and can get pretty protracted and nasty. Is there evidence that this company doesn't uniformly follow this policy? There's just nothing in the record to indicate that it seems to be applied on a rather ad hoc basis. There was this audit done by Barbara Chalmers in this case, the individual who, in August of 2002, apparently, allegedly made a decision to terminate Mr. Greisbaum along with some other individuals who were on leave for 12 months or more. But there was no notification. There was nothing given to this man other than verbal assurances that he had his job. I understand that. But is there any indication that this company, if it realizes—I understand they have administrative issues within the company, but that if the responsible people finally understand, yes, the email should be terminated in accordance with our policy, that it isn't done? I mean, if you could show, for example, that it isn't done, but it is done if the person has filed a compensation claim, then you have something. But is there any indication that they don't follow this, that they're aware of it? They do not seem to be aware of the need to show any type of protection for workers' comp claimants. They were—the individual who sent out the letter, Ms. Flintock, Maureen Flintock, was the person who was in the compensation department who administered LTD claims, STD claims, and workers' comp claims. She obviously knew that Mr. Greisbaum was a recipient and an applicant for workers' comp benefits. She's the one that sent out the only letter, the only notification about a potential termination. It wasn't even a termination letter. It was a notification at the end, page 2 of the letter, saying, oh, and by the way, if you're still out on leave after 12 months or more, you're automatically, if so facto, terminated without any further notification. And the company also has a policy— Well, what's wrong with that? That's their policy all over the world. Mr. Greisbaum testified that there's another policy for termination that involves an exit interview. And this was something that was really bothering him. After 20 years of exemplary service, he was the leading sales rep in his group. I mean, this was a man who was receiving accolade after accolade from Aventis and his predecessor. And all of a sudden, he's unceremoniously booted out without even getting the benefit of a phone call or a letter. And also after getting verbal assurances that his job was safe. What else would he get? Somebody telling him— I mean, they could have done it in a better fashion. But other than make him feel good, what else would he have out of this? Well, Your Honor, if we're looking at the circumstantial evidence in the case, and I studied Williams v. Borough of Westchester on page 13 of my brief, that said that in a retaliation case, you have to produce some affirmative evidence of retaliation, but it has to be more than a scintilla, but may amount to less than a preponderance. We don't have, in these kind of cases, and counsels in these sort of cases say this all the time, but rarely do we have a smoking gun that says, let's terminate Jared Greisbaum because he's annoying us with his ongoing workers' comp claims. We have to piece together bits of circumstantial evidence. And when they abrogate their own policies with respect to how they terminate an employee, it's certainly a jury question as to whether or not there was something more venal behind this motivation. Was it just a clinical, objective, purely reasonable application of a standard that was a company policy? Or, indeed, was it indicative of something much more nasty and mean-spirited? Unfortunately, Schick v. Shirey didn't necessarily enunciate a test to be followed, unlike some of the Title VII cases in federal court in which the tests are spelled out. But yet in Rothrock, if you look at the Rothrock case that the court decided later, interpreting Schick versus Shirey, they extended the application of the rule even further. He said that a company may not penalize an employee who refuses to discourage an individual from applying for workers' comp packets. So the Pennsylvania courts, as indicated in Rothrock, have shown a willingness to take— I think we're familiar with the cases, counsel. Please help me out. What concrete evidence did you people present that the termination was because he filed this workman's compensation claim? I did not find it in your brief, and I've been listening carefully to all this lengthy argument this morning. Just help me out. Tell me what evidence there was. Your Honor, all we have is the filing of the claim itself. All the evidence that I see is that Ms. Chapman testified on why he was terminated. Where was the evidence that undergirds your issue before this court this morning? Well, Judge Allison, this individual was in his automobile accident August 21st of 2001. And January 16th of 2002 is when this threatening letter was sent out to him indicating that your benefits are under review. You've got—you're currently receiving STD. You can convert that into long-term disability after the six months eligibility expire. And at the very last line at the end saying that you will be terminated if you're still out on leave after 12 months. There was no need whatsoever to send out that letter. And if— What did that letter say about workman's compensation? That letter actually mentioned benefits— That said—that expressly or inferentially said if you file an application for worker's compensation, you're going to be terminated. That's your burden. That was your burden below. That's your burden here. And I just want to—is there anything more other than that letter? No, just that letter, which the company concedes was not even received by Mr. Grossbaum. In other words, we cannot accept a post-help, prompter-help issue here is because he filed for worker's compensation and was later terminated. The filing was the reason for his termination in the presence of a company policy. If you could help me, and you haven't been able to help me so far, so I'll just leave it at that. I just want to point out in answer to your question, Your Honor, that the letter itself was—the individual who signed that letter, Ms. Flintock, testified in her deposition that she did administer worker's comp claims. So she was an individual who was in a position to have knowledge of and be aware of the filing of the worker's comp claim. Now, she didn't mention worker's comp in her letter, but her position in her deposition indicated that she would have had that knowledge. Are you aware of any case in which this company had an employee who was—you can answer this question—who was out for more than a year and was aware of it that they did not terminate the employee? I myself was involved in one case, Diley v. Waste Management. It was in the Eastern District. This company? Not this company. I don't know. In other words, I said this company. Any case in which this company had an employee who was out for more than a year, as was the plaintiff here, and they didn't terminate him? I only have anecdotal evidence of that, Your Honor, but I'm not going to offer it as proof of this case. Well, was there anything—this was a summary judgment. Did you present anything to the—sometimes you see this. The plaintiff says, look, look what they did with this person. You know what I mean? But was there—they didn't do that to this other guy, but they did it to me. Is there anything here along that line? I said, look, somebody else was out for 14 months and they didn't terminate him. We don't have that evidence, Your Honor. Well, I don't know what's in the case. I mean, I'm really— Thank you, Mr. Russo. Thank you, Judge. Mr. Haney, is it? Haney, Your Honor. Haney. Good afternoon. My name is Aziz Haney. I'm for Aventus Pharmaceuticals. We, Your Honors, are as befuddled as you perhaps at the lack of evidence in this case and why we are here. There's just a few undisputed facts that should decide this case, and in Aventus' favor. In August of 2001, Mr. Gricebaum was involved in a car accident. As a result of that accident, he has not been able to work in any capacity since. He admitted that he could not return to work at any time between 2001 and through his deposition. At all times relevant, both before and after his accident and at the time of his termination, Aventus maintained a policy of terminating all employees, as Judge Greenberg pointed out, that it would apply regardless of whether you were heard at work and filed a worker's comp claim or whether you were heard at home and did not. After 365 days of consecutive medical leave, you would be terminated. My opponent has suggested there's some disputes as to whether or not his client was aware of this policy. I submit that there is no such dispute and it's irrelevant in any event. First, the policy was contained in the policy manual, which the plaintiff admitted that he received. That's at the supplemental appendix, page 45. The policy was also available on the intranet site of the company and, as I said, distributed to employees in a policy manual. In August of 2002, Barbara Chalmers, an individual who had no idea who the plaintiff was, let alone that he had filed a worker's comp claim, in a purely administrative exercise, went through the records, found individuals, including the plaintiff. I have a little bit of a problem with that factual allegation that they go on. Which one? Well, I think that even though your client's a big company, I think it strains credibility to say that she didn't have any knowledge that that Grice Wong was on a worker's comp. That's just my own assessment. I'm not sure it changes anything. That may be, although the only evidence in this case, Your Honor, is to the contrary. So whatever our own beliefs may be, there's no evidence to support any such inference. She terminated Mr. Grice Wong's employment, consistent with the 365-day absence policy, medical leave policy, just as she would have done for any other employee, regardless of whether they had filed a worker's compensation. Did he have a right to converse then and get benefits? Was that a letter that he probably didn't get, talked about that? Did he then have the right, or was he just kicked out the call? No, Your Honor. He has received both short-term disability and long-term disability benefits. He also has received his worker's compensation benefits. I don't know his status today as whether or not the insurer is still paying long-term disability. I do know at least through February of 2005, four years after the accident, he was still receiving benefits. Would he get a pension, too, based on 21 years? Your Honor, I have to apologize. I'm not familiar with their pension plans. My assumption would be yes, he would. I don't know if it was a defined contribution or a defined benefit plan, but presumably he would get whatever pension he had already vested in at that point. So back to the undisputed evidence. Ms. Chalmers, the only evidence is that Ms. Chalmers didn't know that he had filed a worker's compensation claim. Plaintiff admitted at his deposition that he wasn't aware of anyone at the company who knew he had filed a worker's compensation claim. He admitted that he didn't know who made the determination to terminate him. He admitted that he represented to his insurer that he was terminating for being on leave for longer than 12 months. And he admitted that, as far as he knows, that was the only reason for the termination. And as my opponent mentioned, his argument that it appears that the company has followed this policy in a mechanical fashion for all employees. Well, that's a good argument from your point of view. That's a fantastic argument from my point of view. I would submit that the case begins and ends there. There's simply no causal relationship between the worker's compensation claim and the termination. This court, albeit in non-presidential opinions, has before held that when the- You don't need to tell us what we did in the non-presidential opinions. Very well, Your Honor. The lower district court, the district courts have then repeatedly found that such policies are legitimate non-discriminatory reasons for terminating an employee. They've also found that when the decision-maker is unaware of the protected activity, there can be no causal link. At that point, I think that, A, the plaintiff cannot make- Well, why would it matter if they were aware or not if they uniformly applied the policy? It wouldn't matter, would it? I think that's right, Your Honor. Is there any indication that they didn't uniformly follow the policy? Because he says they did. They did it mechanically. You're right. There is no such evidence. Turning back- Excuse me. Has Mr. Greisbaum, in this case, properly challenged whether or not the policy itself is in fact discriminatory and not legitimate? No. I would go on to say that I don't think there's any basis for such a challenge. It sounded as though, for the first time, he was raising some sort of a disparate impact theory before this court. Number one, I don't know that a disparate impact theory has ever been addressed with respect to a common law retaliation claim, setting aside Title VII and other federal statutory claims. And I don't think that there's any reason to believe that the neutral application of this policy would be problematic in any way. Clearly, being able to terminate an employee who can't come back to work, as Mr. Greisbaum could not, is just not discriminatory at all. And certainly legitimate and job-related in any way. I don't want to hurt the court. If there's no further questions, I think that the case is clear. If you'd like me to address Rothrock, I will, but I don't have any questions. No. Thank you. Thank you, Your Honors. Mr. Woodson? Your Honors, I just want to make one point. Counsel for Aventis indicated that Mr. Greisbaum is permanently disabled and unable to work. That is true. The point being that had he not been terminated, as if for cause, that there's a substantial lucrative severance package that would have been applicable under company policy for somebody with 28 years of good service. So I just thought that this should clarify that, granted, this man can't come back to the company. He never sought reinstatement, but he lost a lot of money as a result of being terminated, as if he had done something wrong. And also, even though CASEL continues to say that this is just the clinical, rather cold-blooded, neutral application of a company policy, they insist on trying to say that Barbara Chalmers knew nothing about the filing of a workers' comp claim. And they differentiate between Maureen Flintock, who worked in the workers' comp area, versus the actual decision to terminate me by Ms. Chalmers. That's the type of evidence that might be sifted through by a jury to find some strands. Suppose she did know. You say that they just apply this policy mechanically. That's the best thing you can do, is apply a policy mechanically. Because if you do that, no one can say that you're discriminating. So if she did know, and she nevertheless, well, it wouldn't make any difference. So we're going to let them go. Then what's the problem? It could be the perfect pretext also. But it can't be a pretext. If you say they apply it mechanically, then they would have done it anyhow. But if the phishing expedition was conducted by Ms. Chalmers, who audited these files to try to find out who was out for 12 months or more, what was the motivation behind that? Is that war? I mean, for a company to look at its records and make sure it's not paying people or doesn't have people on its staff that shouldn't be here? Is that a phishing expedition? Well, actually, the company, if they're on some type of disability benefits, they're not being paid a salary. So there's really no motivation for trying to weed them from the books. They're listed as employees, but they're not a liability, a financial liability in any sense. They're not getting a paycheck. Thank you, Mr. Russo. Thank you, Ron Russo. Thank both counsel for their arguments. And we'll take the matter under advance. Please rise. This court stands adjourned until Tuesday, October 23rd, 2017.